**Bruce M. Warren** (SBN 106457)
12919 Gilmore Ave.
Los Angeles, CA 90066
Tel: (310) 871-0678
E-mail: bruce@sendlgm.com

Attorneys for Plaintiff Peter Negrete

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER NEGRETE, | CASE NO. 5:17-cv-939 |
| Plaintiff, | COMPLAINT |
| vs. | DEMAND FOR JURY TRIAL |
| STARR INDEMNITY & LIABILITY COMPANY, | |
| Defendant. | |

Plaintiff PETER NEGRETE hereby alleges as follows:

## DEMAND FOR JURY TRIAL

1. PLAINTIFF hereby demands a trial by jury.

## PARTIES

2. Plaintiff PETER NEGRETE ("PLAINTIFF") is, and at all times herein mentioned was, an individual residing in Riverside County, in the State of California.

3. Defendant STARR INDEMNITY & LIABILITY COMPANY ("STARR") is, and at all times herein mentioned was, an insurer organized under the laws of Texas with its principal place of business in New York. STARR is authorized to and is conducting business in the State of California as an approved

and licensed insurer.

## JURISDICTION AND VENUE

4. This court has personal jurisdiction over STARR because of its extensive and continuous insurance activities within the State of California.

5. Because the parties are citizens of different states and there is complete diversity of citizenship and the amount in controversy exceeds the jurisdictional limit of this Court, jurisdiction is proper under 28 U.S.C. §1332.

6. Venue is appropriate pursuant to 28 U.S.C section 1391(b)(2) because PETER NEGRETE is a resident of Riverside County, within this District, because STARR has extensive and continuous insurance activities within the State of California, and because a substantial part of the events or omissions giving rise to PLAINTIFF's claims occurred within the Central District of California.

## BACKGROUND/UNDERLYING LAWSUIT

7. On May 23, 2010, a two vehicle accident occurred on Interstate 15 near Fallbrook, California involving a Ford passenger van owned by VPSI, Inc. and a tractor trailer owned by Mar-Con Products ("Mar-Con").

8. At all times relevant hereto, VPSI operated a vanpooling service that provided vehicles to members of the vanpool to commute to work. Greg Binde was driving the VPSI van at the time of the accident pursuant to the terms of an Alternate Volunteer Driver Agreement (the Agreement) between Binde and VPSI.

9. Plaintiff PETER NEGRETE was a member of the vanpool and one of the passengers in the van at the time of the accident, all of whom suffered injuries of varying severity.

10. In late 2012 and early 2013, Plaintiff, PETER NEGRETE and other injured passengers including JAMES ENGEL (and his wife JOAN ENGEL who was not a passenger but filed her own loss of consortium cause of action), DAVID BELGER, MARK VEZZANI, LINCOLN WESTERLUND, and JEFFREY

DESHAZER ("Other Passengers") filed separate lawsuits in San Diego County Superior Court, naming as defendants: GREG BINDE and VPSI; as well as MAR-CON, the owner of the tractor trailer, and BRUCE WARNER, the tractor-trailer's driver (the "State Action Defendants").

11.    In 2013, the above-described lawsuits were consolidated for all purposes, including trial, before the Honorable Joel Pressman in the Central Division of the San Diego Superior Court. The consolidated cases were the subject of intense litigation over a three-year period between PLAINTIFF and the Other Passengers on the one hand, and the State Action Defendants, on the other, as well as between the separate State Action Defendants in their cross-actions. Extensive written discovery was undertaken, documents produced, depositions taken, and expert discovery conducted. Law and motion practice included multiple motions for summary judgment and summary adjudication, motions to bifurcate and motions to resolve discovery disputes. Additionally, ongoing settlement efforts were pursued by the parties, including participation in multiple mediations.

12.    During the course of litigation of the underlying matters, it became apparent to all parties, including Greg Binde, and all affected insurance carriers that aggregate damages suffered by the PLAINTIFF and the Other Passengers greatly exceeded available insurance from all sources. PLAINTIFF is informed and believes that it was also apparent to, or should reasonably have been apparent to STARR. Damages reasonably claimed by co-plaintiffs Mark Vezzani and Lincoln Westerlund exceeded seven million dollars. Damages reasonably claimed by co-plaintiffs James Engel and Joan Engel exceeded ten million dollars. Combined damages claimed by PLAINTIFF and the Other Passengers was reasonably estimated to equal or exceed twenty million dollars.

13.    Discovery also established the high likelihood that Greg Binde, as the driver of a van which struck a slower moving tractor trailer from the rear, would

be found to bear significant responsibility for the collision, given his sworn testimony that he was traveling at 75 miles per hour in a posted 70 mile per hour zone. Furthermore, it was established:

- Darkness and patchy fog rendered visibility poor at the time of the collision;
- Greg Binde had the cruise control set at 75 mph immediately prior to the collision despite poor visibility and increasing traffic;
- Greg Binde was operating the van with his feet on the floor rather than on the pedals;
- The posted speed limit for automobiles was 70 mph but 55 mph for trucks with trailers;
- Greg Binde passed multiple signs warning of "slow trucks" shortly before the collision;
- Greg Binde testified he moved from the fast lane to the far right slow lane immediately before the collision to avoid known traffic and to avoid having to disengage the cruise control, while at the same time distracted by scrolling through multiple digital radio menus and sub-menus to adjust the van's radio.

14. In June, 2015, Mar-Con and its driver, Bruce Warner, and their insurance carrier settled all claims against them for their policy limits of $2,000,000. The trial court granted Mar-Con's good faith settlement motion approving the settlement over Greg Binde's objection, implicitly rejecting Greg Binde's contention that Mar-Con and its driver were primarily responsible for the accident.

15. Defendant VPSI prevailed on its summary judgment motion asserting it was not liable for the negligence of Greg Binde because its drivers were independent contractors, not employees, and because applicable federal law

precluded claims against it. VPSI eventually settled all remaining claims against it for $300,000, ultimately leaving Greg Binde as the sole remaining defendant in the state action.

16. All remaining claims against Greg Binde in the State Action were tried by reference, from May 2, 2016 through May 5, 2016, pursuant to a general reference order entered by the Honorable Joel Pressman. Witnesses were sworn and testified, oral and documentary evidence was received, and counsel presented written briefs and oral argument. A Decision by Referee was issued by Thomas E. Sharkey, Esq., finding Greg Binde 100% at fault and responsible for the injuries and damages suffered by PLAINTIFF and the Other Passengers. The Referee further ruled that the combined damages of PLAINTIFF and the Other Passengers exceeded the sum of $20,000,000.

17. On July 27, 2016, a judgment was entered in favor of PLAINTIFF and the Other Passengers. The Judgment, applying credits resulting from other payments, awarded PLAINTIFF damages against Greg Binde in the sum of $322,366.00. The Judgment awarded total damages to PLAINTIFF and the Other Passengers against Greg Binde, adjusted for credits and exclusive of costs, in the sum of $17,794,898. The Judgment became final as of that date and, pursuant to California law, for so long as said judgment remains unpaid, it accrues interest at the rate of ten percent (10%) per annum.

## INSURANCE POLICIES

18. At the time of the collision, VPSI was insured under a primary Business Auto Policy issued by Zurich American Insurance Company, policy number BAP370030454 04, which covered the period November 1, 2011 to November 1, 2012. The Zurich Policy provided liability coverage for all sums the "insured" was required to pay as damages because of "bodily injury" caused by an "accident" and resulting from the use of a covered "auto." The Declaration Pages

specify that VPSI is the named insured and that its Limit of Liability is $5,000,000.00.

19. As a permissive user of a covered auto, Greg Binde was also insured under the Zurich Policy. As to him, the Zurich Policy contains a "Two Tier Limit Endorsement," that provides that if the "limit of liability insurance" specified in "any written lease, rental agreement, contract or [driver agreement]," is different than the limit specified in the Business Auto Policy, the lowest available "limit of liability" will apply. Greg Binde's Driver Agreement specifies a "limit of liability" of $1,000,000.00. Zurich repeatedly informed STARR it was prepared to pay its "limit of liability" in order to resolve the claims against Greg Binde, and on or about June 7, 2016, Zurich paid its policy limit of $1,000,000 to the ENGELS and the Other Passengers.

20. At the time of the collision, VPSI and Greg Binde were also insured under a Commercial Excess Liability Policy, policy number SIS1GCE50025911, issued by STARR, which covered the period of November 1, 2011 to November 1, 2012 and which had, as its Limit of Liability, $5,000,000. Except for the terms and conditions of the STARR Policy, which control, the STARR Policy "follows form" of the Zurich Policy, which is specified to be the sole "underlying insurance." By its terms, Greg Binde is an "additional insured" under the STARR Policy.

21. By virtue of Zurich's agreement to pay, and subsequent payment of its policy limit of $1,000,000; the entry of an aggregate judgment in the sum of $17,794,898 for injuries to PLAINTIFF and the Other Passengers; and individual judgments for MARK VEZZANI of $3,271,645 and LINCOLN WESTERLUND of $3,287,471, Greg Binde has exhausted the limits of his underlying primary insurance and, therefore, has triggered STARR'S obligation to pay benefits under the STARR Excess Policy.

COMPLAINT

## FIRST CAUSE OF ACTION

PLAINTIFF, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT STARR FOR PAYMENT OF JUDGMENT PURSUANT TO INSURANCE CODE SECTION 11580, ALLEGES:

22. PLAINTIFF refers to and incorporates by reference herein, all previous paragraphs herein, as though set forth in full in this cause of action.

23. California Insurance Code section 11580(b)(2) permits a party who has obtained a judgment against an insured tortfeasor to maintain a direct action against the insurer providing liability insurance to the tortfeasor "on the policy and subject to its terms and conditions."

24. PLAINTIFF obtained a judgment against STARR's insured.

25. The judgment PLAINTIFF obtained against STARR's insured was covered by STARR's policy.

26. PLAINTIFF is informed and believe, and thereon alleges that, Greg Binde faithfully performed all obligations required to be performed under the terms of the Policy, except to the extent that such performance was excused by, STARR.

27. By virtue of the foregoing, PLAINTIFF is entitled to payment of the judgment by STARR in the sum of $322,366.00, plus interest.

## SECOND CAUSE OF ACTION

PLAINTIFF, FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT STARR FOR BREACH OF CONTRACT BASED ON ASSIGNMENT, ALLEGES:

28. PLAINTIFF refers to and incorporates by reference herein, all

previous paragraphs herein, as though set forth in full in this cause of action.

29. In the consolidated state court actions brought by PLAINTIFF, along with the Other Passengers against Greg Binde and other defendants, issues involving the severity and extent of PLAINTIFF'S injuries as well as the cause of the accident and relative fault of various defendants, including Greg Binde, were extensively litigated.

30. On multiple occasions, PLAINTIFF, the Other Passengers, and Greg Binde, notified STARR and other carriers that claimed damages greatly exceeded the limits of liability of both primary and excess coverage available to Greg Binde.

31. PLAINTIFF, Other Passengers, and Greg Binde notified STARR and other carriers that Greg Binde was likely to be found substantially at fault for the accident by virtue of his admission that he was both speeding and inattentive at the time of the collision.

32. PLAINTIFF, Other Passengers, and Greg Binde notified STARR on multiple occasions that the evidence presented over the course of the litigation, coupled with the trial court's rulings on evidentiary motions, made it extraordinarily unlikely that Greg Binde would avoid a finding of significant fault for the collision causing the claimed injuries. In this regard, STARR was aware, or should have been aware, that the trial court, in granting Mar-Con's good-faith settlement motion, implicitly rejected the assertion that Mar-Con and its driver Bruce Warner were solely or primarily responsible for the subject collision.

33. On November 17, 2015, a joint settlement demand in the amount of $6,300,000 was made by PLAINTIFF and Other Passengers to Greg Binde. At that time, Zurich Insurance agreed to pay its $1,000,000 policy limit and an additional insurer of Greg Binde's, Progressive Insurance, agreed to pay its policy limits of $300,000. As such, PLAINTIFF and Other Passengers tendered a policy

limits demand to STARR and demonstrated exhaustion of Greg Binde's underlying insurance, thereby triggering STARR'S excess policy.

34. On December 7, 2015, Greg Binde, through counsel, requested that STARR acknowledge its obligations and accept the joint settlement demand by PLAINTIFF and Other Passengers. Greg Binde disputed STARR'S previously-stated contention that Greg Binde was not responsible for the accident, and specifically directed STARR's attention to the fact that Greg Binde had testified to facts that supported his negligence was a substantial factor in causing the subject collision. Greg Binde further disputed STARRS' contention that it had no obligation to participate in the settlement because "the language" of the policy "makes clear that it is triggered by a covered claim only upon the proper exhaustion of the $5 million underlying limits." Finally, Greg Binde requested STARR to take all necessary steps to protect him from the financial disaster represented by the enormous potential judgment he was facing.

35. On December 14, 2015, STARR rejected the joint demand and refused to contribute any money toward the settlement and otherwise refused to participate in any fashion in the defense or indemnification of the consolidated lawsuits, inexplicably arguing that Greg Binde was completely without fault. In rejecting the November 17, 2015 demand, STARR failed to adequately investigate and evaluate the claims against its insured in good-faith and failed to interpret its policy language in a reasonable manner or a manner consistent with the way it had previously interpreted that language. Without challenging the extent and severity of damage claims greatly in excess of its policy limits, or participating in previous good-faith settlement proceedings limiting the liability of Mar-Con upon payment of its $2,000,000 policy limits, STARR took an absurd position despite its knowledge that the overwhelming weight of evidence developed in the underlying matters, including Greg Binde's own admissions, established he was substantially

at fault for the collision and the resulting injuries suffered by PLAINTIFFS and Other Passengers.

36. On March 1, 2016, recognizing both the vast exposure created by a personal judgment against him, and his financial incapability of paying the amounts demanded of him, Greg Binde entered into an agreement to assign and transfer to PLAINTIFF and the Other Passengers specified claims, rights, and rights of recovery that Greg Binde had, or thereafter might acquire, against STARR, in exchange for a covenant to limit execution, which became operative only when, and if, judgment was entered against Greg Binde following a contested proceeding.

37. PLAINTIFF is informed and believe, and thereon alleges that, Greg Binde faithfully performed all obligations required to be performed under the terms of the Policy, except to the extent that such performance was excused by, STARR.

38. In addition to the express promises STARR made in the policy of insurance, STARR made an implied promise, referred to as the implied covenant of good faith and fair dealing. Under this implied promise, STARR promised it would do nothing to deprive its insureds of the expected benefits of the insurance policy. One of the expected benefits was that STARR would protect them from a verdict in excess of the applicable policy limits by accepting a reasonable settlement demand within the policy limits if there was a substantial likelihood of a verdict in excess of those limits. In making this implied promise, STARR also impliedly promised, among other things, that in the event of a loss and claim, it would act reasonably in its investigation of any claim and would objectively and fairly evaluate the amount of the claim and would give its insureds' interests at least as much consideration as it gave its own interests.

39. STARR breached this implied promise and the implied covenant of

good faith and fair dealing in its handling of the claim against Greg Binde. In particular, STARR unreasonably failed to contribute to a settlement package that would have avoided a judgment against Greg Binde that was in excess of the applicable policy limits.

40. By virtue of the assignment by Greg Binde PLAINTIFF is entitled to maintain this cause of action for breach of contract.

41. There is now due and owing to PLAINTIFF the amount of the judgment which STARR has failed and refused to pay on behalf of its insured.

**THIRD CAUSE OF ACTION**

PLAINTIFF, FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT STARR FOR BREACH OF THE IMPLIED COVENANT OF GOOD-FAITH AND FAIR DEALING BASED ON DEFENDANT STARR'S FAILURE TO SATISFY THE JUDGMENT AGAINST ITS INSURED, ALLEGE:

42. PLAINTIFF refers to and incorporates by reference herein, all previous paragraphs herein, as though set forth in full in this cause of action.

43. By virtue of the judgment in favor of PLAINTIFF against Greg Binde, by operation of law, PLAINTIFF because an intended third party beneficiary of the policy of insurance issued by STARR. As an intended third party beneficiary of the policy of insurance PLAINTIFF became an intended beneficiary of the implied covenant of good faith and fair dealing contained therein. As to PLAINTIFF in his role as an intended beneficiary of the policy and the implied covenant of good faith and fair dealing, the implied covenant of good faith and fair dealing required that STARR to promptly pay a judgment in favor of PLAINTIFF.

44. STARR breached the implied covenant of good faith and fair dealing

vis-à-vis PLAINTIFF by unreasonably failing to pay the judgment against Greg Binde within a reasonable period of time after that judgment was rendered. Plaintiff is informed and believes that the failure was unreasonable because, among other things, STARR had not done a reasonable analysis of the language of its policy and did not have a facially reliable analysis from an attorney competent to perform such an analysis.

45. As a proximate result of STARR'S breach of the implied covenant of good faith and fair dealing, PLAINTIFF has suffered, and will continue to suffer in the future, damages in an amount to be shown at the time of trial. Such damages include attorney's fees and costs that PLAINTIFF must pay to compel STARR to satisfy his judgment against Greg Binde.

46. At all relevant times, STARR knew or was charged with knowing that under California law, established in 1994, a judgment creditor became an intended third party beneficiary under the policy.

47. At no relevant time did STARR have a reasonable basis for believing the position it took regarding the coverages available under its policy was meritorious. PLAINTIFF is informed and believes that if STARR took the position it took based on a legal opinion from an attorney, that legal opinion was so facially deficient that no reasonable insurance professional would have relied upon it.

48. The individuals within STARR who made the decision not to pay the judgments against Greg Binde were managerial agents of STARR in that they were vested with substantial discretion in making claims decisions.

49. STARR's conduct in refusing to pay the judgment against Greg Binde was malicious and oppressive and fraudulent and beyond that which is tolerated in a civilized society. STARR did the things it did and failed to do the things it ought to have done, all with a conscious disregard of the rights and well-

being of PLAINTIFF. STARR's decision not to pay the judgment against Greg Binde was not an act of mere negligence or even mere ineptness. Rather, it was part of a corporate culture designed to avoid paying its just contractual obligations. STARR's misconduct was not an isolated event, but was consistent with its regular business practices. As such, an award of punitive damages is appropriate to punish STARR and to deter it and others similarly situated from engaging in comparable conduct

### FOURTH CAUSE OF ACTION

PLAINTIFF, FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT STARR FOR BREACH OF THE IMPLIED COVENANT OF GOOD-FAITH AND FAIR DEALING BASED ON DEFENDANT STARR'S FAILURE TO SATISFY THE JUDGMENT AGAINST ITS INSURED, ALLEGE:

50. PLAINTIFF refers to and incorporates by reference herein, all previous paragraphs herein, as though set forth in full in this cause of action.

51. By virtue of the judgment in favor of PLAINTIFF against Greg Binde, by operation of law, PLAINTIFF because an intended third party beneficiary of the policy of insurance issued by STARR. As an intended third party beneficiary of the policy of insurance PLAINTIFF became an intended beneficiary of the implied covenant of good faith and fair dealing contained therein. As to PLAINTIFF in his role as an intended beneficiary of the policy and the implied covenant of good faith and fair dealing, the implied covenant of good faith and fair dealing required that STARR to promptly pay a judgment in favor of PLAINTIFF.

52. STARR breached the implied covenant of good faith and fair dealing vis-à-vis PLAINTIFF by unreasonably failing to pay the judgment against Greg

Binde within a reasonable period of time after December 13, 2016, when the Honorable Stephen V. Wilson ruled on STARR's Motion for Summary Judgment in an action for declaratory relief filed by STARR against PLAINTIFF, the Other Passengers and Greg Binde in the United States District Court for the Central District of California (Case No. 5:15-cv-02566-SVW-DTBx). At that time, Judge Wilson denied STARR's motion for summary judgment and sua sponte granted summary judgment against STARR finding that STARR's interpretation of its policy was wrong and accordingly, its full $5,000,000 of coverage was owed to PLAINTIFFS and the Other Passengers who had net collective judgments against STARR's insured, Greg Binde, in excess of $17,000,000. Plaintiff is informed and believes that the failure was unreasonable because whether STARR felt Judge Wilson was wrong or not, STARR had not done a reasonable analysis of the law sufficient to conclude that Judge Wilson's ruling was erroneous and one that was likely to be reversed on appeal and did not have a facially reliable analysis from an attorney competent to perform such an analysis.

53. As a proximate result of STARR'S breach of the implied covenant of good faith and fair dealing, PLAINTIFF has suffered, and will continue to suffer in the future, damages in an amount to be shown at the time of trial. Such damages include attorney's fees and costs that PLAINTIFF must pay to compel STARR to pay his judgment against Greg Binde.

54. At all relevant times, STARR knew or was charged with knowing that under California law, established in 1994, a judgment creditor became an intended third party beneficiary under the policy.

55. At no relevant time did STARR have a reasonable basis for believing that Judge Wilson had made errors of fact or law in connection with his December 13, 2016, ruling. PLAINTIFF is informed and believes that if STARR believed Judge Wilson had erred, based on a legal opinion from an attorney, that legal

opinion was so facially deficient that no reasonable insurance professional would have relied upon it. Although STARR filed an appeal, at the time it did so, it did not have a reasonable basis for believing it would prevail on appeal. Rather, it filed the appeal to stall having to pay the judgments with the hope and expectation that it could settle the appeal by paying less than the actual judgments.

56.  The individuals within STARR who made the decision not to pay the judgments against Greg Binde and to file an appeal of Judge Wilson's order and judgment were managerial agents of STARR in that they were vested with substantial discretion in making claims decisions.

57.  STARR's conduct in refusing to pay the judgment against Greg Binde was malicious and oppressive and fraudulent and beyond that which is tolerated in a civilized society. STARR did the things it did and failed to do the things it ought to have done, all with a conscious disregard of the rights and well-being of PLAINTIFF. STARR's decision not to pay the judgment against Greg Binde was not an act of mere negligence or even mere ineptness. Rather, it was part of a corporate culture designed to avoid paying its just contractual obligations. STARR's misconduct was not an isolated event, but was consistent with its regular business practices. As such, an award of punitive damages is appropriate to punish STARR and to deter it and others similarly situated from engaging in comparable conduct

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment and relief against STARR as applicable to each cause of action as follows:

1. For payment of the judgment against Greg Binde, plus interest, according to proof;
2. For general and compensatory damages, in an amount to be

proven at time of trial;

3. For Attorneys' fees and costs incurred to obtain insurance benefits;

4. Punitive and exemplary damages;

5. For prejudgment interest;

6. For costs of suit incurred herein; and

7. For such other and further relief as the Court deems just and proper.

Dated: May 3, 2017

By:_____/s/_____
Bruce M. Warren, Esq.
Attorneys for Plaintiff Peter Negrete

**DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands a trial by jury.

Dated: May 3, 2017

By:_____/s/_____
Bruce M. Warren, Esq.
Attorneys for Plaintiff Peter Negrete